IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| HOPE SURROGACY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3:20-cv-1028-jdp |
| v. | ) |
| | ) |
| CARRYING HOPE SURROGACY, LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**CARRYING HOPE'S MOTION
FOR ATTORNEY FEES**

## I.     Introduction

Plaintiff Hope Surrogacy, Inc. ("Hope Surrogacy") brought this case in Wisconsin against out-of-state Defendant Carrying Hope Surrogacy, LLC, ("Carrying Hope") without any basis to do so, in an obvious attempt to impose litigation burdens and coerce Carrying Hope to change its name. Carrying Hope was forced to engage Wisconsin counsel and spend resources to show that the case should be dismissed because this Court does not have personal jurisdiction over Carrying Hope.

When the time came for Hope Surrogacy to justify its strategic decision to sue in Wisconsin, however, it had absolutely nothing to show. Indeed, Hope Surrogacy made no effort *whatsoever* to show that this Court has personal jurisdiction over Carrying Hope, or that Hope Surrogacy had a good faith basis to bring the case in Wisconsin in the first place. Instead, Hope Surrogacy presented more unsupported and conclusory assertions, on top of the conflicting assertions it has made to Carrying Hope and the Court in the past. Hoping to sidestep the jurisdictional question and obfuscate its gamesmanship, Hope Surrogacy asked the Court to

1

transfer the case to Carrying Hope's home district in North Carolina. But, as explained in its reply brief in support of its motion to dismiss, Carrying Hope submits that this Court should not transfer the case, but should dismiss it outright.

Regardless of how the Court resolves the motion to dismiss, it is clear that Hope Surrogacy never should have filed suit in Wisconsin. Hope Surrogacy had no good faith basis to believe that this Court held personal jurisdiction over Carrying Hope, and the lawsuit was an abuse of the judicial process designed to improperly burden Carrying Hope. Accordingly, Carrying Hope requests that this Court use its inherent authority to award Carrying Hope its attorney fees in preparing and filing its papers on the uncontested motion to dismiss.

## II.    Legal Standards

Federal courts possess certain "inherent powers," not conferred by rule or statute, "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). That authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). And one permissible sanction is an "assessment of attorney's fees" — an order, like the one issued here, instructing a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side. *Id.*, at 45, 111 S.Ct. 2123.

*Goodyear Tire & Rubber Co. v. Haeger*, ___ U.S. ___, 137 S. Ct. 1178, 1186 (2017); *see also Fuery v. City of Chicago*, 900 F. 3d 450, 452 (7th Cir. 2018). When a court makes such an award under its inherent authority, "such an order is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Goodyear*, 137 S. Ct. at 1184. "A district court has broad discretion to calculate fee awards under that standard." *Id*.

2

### III.     Argument

This case presents a prime instance where this Court should use its inherent authority to award Carrying Hope its fees to prepare its motion to dismiss and supporting papers. Hope Surrogacy abused the judicial process when it filed this case in Wisconsin without a good faith basis to believe this Court held personal jurisdiction over Carrying Hope. The fees to prepare Carrying Hope's motion to dismiss and supporting papers, moreover, plainly were incurred solely *because* of this misconduct, and would not have been incurred *but for* the suit in Wisconsin. Had Hope Surrogacy filed suit in North Carolina in the first place—in the jurisdiction where it *now* asks the Court to transfer the case—personal jurisdiction would not have been an issue. But because Hope Surrogacy filed suit in Wisconsin, Carrying Hope was forced either to challenge personal jurisdiction or consent to being haled into Hope Surrogacy's home jurisdiction in violation of its Due Process rights. The misconduct was not merely filing suit in a venue where jurisdiction was ultimately found lacking, it was that Hope Surrogacy had no good faith basis to believe jurisdiction existed, as shown at least by the fact that it could not provide even a colorable basis for personal jurisdiction when given the chance to do so.

In its moving papers with its motion to dismiss, Carrying Hope submitted substantial and probative evidence showing that this Court lacks personal jurisdiction. (Dkt. 11 at 11-17 & Dkt. 12.) Carrying Hope also demonstrated that Hope Surrogacy's allegations in its Complaint were deficient on their face and that the Complaint's limited jurisdiction allegations (Dkt. 1 ¶ 9) failed to track any statutory basis for jurisdiction over Carrying Hope or even allege that the Wisconsin long-arm statute could somehow apply to this case. (Dkt. 11 at 6-8.) Carrying Hope further demonstrated that Hope Surrogacy's jurisdictional allegations in the Complaint—made on information and belief—were vague, conclusory, and appeared to be merely hopeful speculation. (Dkt. 11 at 8-11.)

3

In response, Hope Surrogacy failed to present *any* evidence supporting the existence of jurisdiction. Instead Hope Surrogacy responded with vague, conclusory and unsupported assertions that "jurisdictional discovery could indicate that Defendant does, indeed, have sufficient contacts with Wisconsin such that jurisdiction and venue is proper," that "Plaintiff brought suit in this jurisdiction in good faith," that "[a]ctual confusion is occurring in this judicial district and Plaintiff is suffering injury in this judicial district," and that "[i]n light of the confusion Plaintiff was experiencing, Plaintiff reasonably believed that Defendant was actively directing its services into Wisconsin." These assertions are just as vague and unsupported as those present in the Complaint.

Hope Surrogacy's bad faith in dealing with Carrying Hope is further demonstrated through its pattern of conflicting and false and misleading statements both to Carrying Hope and the Court.

Hope Surrogacy's counsel first contacted Carrying Hope in an October 19, 2020 letter to Ms. Nicole Stanley at Carrying Hope. The letter requested that Carrying Hope "cease all use of the mark CARRYING HOPE SURROGACY" and stated:

> In fact, confusion in the marketplace is already occurring. Our client recently received records and a release form addressed to Carrying Hope. The records did not include any return fax or phone number and so our client was unable to inform the sender of the error. Our client has also received phone calls from potential clients confusing Hope Surrogacy with Carrying Hope. This is evidence of consumer confusion in the marketplace.

(Declaration of Christopher R. Liro, filed herewith, at ¶ 2 & Ex. 1. [1]) Similarly, Hope Surrogacy's counsel wrote Carrying Hope's North Carolina counsel in an October 27, 2020 letter, claiming:

---

[1] Carrying Hope has redacted certain portions from the copies of the correspondence submitted to the Court and referenced herein because they include confidential proposed settlement terms exchanged between the parties not material to the motion.

> [T]the medical records our client received that were intended for Carrying Hope were from a potential surrogate in Arizona.

and

> [Hope Surrogacy's alleged nationwide rights are] evidenced by phone calls from potential clients who confused Hope Surrogacy with Carrying Hope immediately after Carrying Hope was formed and before Hope Surrogacy filed its federal trademark applications in June of 2019.

(Liro Decl. ¶ 3 & Ex. 2.) And when Hope Surrogacy filed its Complaint two weeks later on November 12, 2020, it alleged:

> Defendant's use of Defendant's Mark is causing actual consumer confusion. For example, Plaintiff mistakenly received sensitive medical records intended for Defendant. Plaintiff also received phone calls from people who intended to contact Defendant.

(Dkt. 1 ¶ 9.)

Once Carrying Hope pressed Hope Surrogacy for details, however, it became clear that Hope Surrogacy's rhetoric was not factually grounded, but was false and misleading. There were not "phone calls from potential clients confusing Hope Surrogacy with Carrying Hope" or even "phone calls from people who intended to contact Defendant." What there was, as Hope Surrogacy's counsel confirmed in letter and email correspondence sent to Carrying Hope's counsel on December 16, 2020 (Liro Decl. ¶ 4 & Ex. 3) and February 23, 2021 (Liro Decl. ¶ 5 & Ex. 4), was *one* phone call Hope Surrogacy allegedly received in 2019 from an ***unidentified*** person who does not appear to be a client or potential client or even a relevant consumer.

Likewise, there was never an incident where Hope Surrogacy "received records and a release form addressed to Carrying Hope" but "was unable to inform the sender of the error." There does appear to be an instance where Hope Surrogacy received a fax in October 2020 that

was intended to have been sent to Carrying Hope.[2] But Hope Surrogacy's counsel confirmed in letter and email correspondence sent to Carrying Hope's counsel on December 16, 2020 (Liro Decl. ¶ 4 & Ex. 3) and February 23, 2021 (Liro Decl. ¶ 5 & Ex. 4) that when Hope Surrogacy received the fax, it was "able to contact the medical clinic that sent [the fax], but was unable to contact the potential surrogate to inform her of the error because our client does not have her contact information."

Thus, Hope Surrogacy's unsupported and exaggerated allegations did not stop at personal jurisdiction, but also involved its broader representations to Carrying Hope and the Court about the underlying facts and incidents of alleged confusion. Having a good faith basis for its factual assertions was plainly secondary to its strategic goal of pressuring Carrying Hope. And to be clear, Hope Surrogacy's false and misleading assertions of confusion would not have supported personal jurisdiction over Carrying Hope or even evidenced "confusion in Wisconsin" if true. The only Wisconsin connection remains the fact that the plaintiff Hope Surrogacy is in Wisconsin, and the law is clear that this connection alone cannot be the basis to find personal jurisdiction over the defendant Carrying Hope.

Accordingly, it was an abuse of process for Hope Surrogacy to file suit in Wisconsin with no substantiation in its Complaint other than conclusory boilerplate allegations. Moreover, Hope Surrogacy's bad faith was exemplified when it failed to justify the exercise of jurisdiction in response to the motion to dismiss and attempted to mislead Carrying Hope with exaggerated

---

[2] The fax was from a clinic in California and did not involve a surrogate in Arizona or apparently have anything to do with Arizona at all. Hope Surrogacy indicated on March 1, 2021 that it "misspoke" when it referenced Arizona (Liro Decl. ¶ 5 & Ex. 4.), again showing at best a cavalier approach to its factual assertions.

factual claims. This abuse justifies a fee award under this Court's inherent authority because litigants should be strongly deterred from taking such liberties with our court system.

## IV.     Conclusion

For the foregoing reasons, Carrying Hope respectfully requests that this Court grant its motion and order Hope Surrogacy to reimburse Carrying Hope for the attorney fees it incurred to prepare and file its motion to dismiss and supporting papers. If the Court grants the motion, Carrying Hope proposes to submit a specific request to the Court shortly after that time, including invoices documenting the expenses incurred, so that the Court can issue an appropriate order quantifying the award. *See T&M Inventions, LLC v. Acuity Brands Lighting, Inc.*, No. 14-CV-947 Dkt. 81 (E.D. Wis. Sept. 21, 2016) (granting motion for attorney fees, with movant to subsequently file a request detailing the amount).

Date: April 19, 2021                                      Respectfully submitted,

*s/Christopher R. Liro*
Christopher R. Liro (Wis. Bar No. 1089843)
chris.liro@andruslaw.com
Aaron T. Olejniczak (Wis. Bar No. 1034997)
aarono@andruslaw.com
Andrus Intellectual Property Law, LLP
790 North Water Street, Suite 2200
Milwaukee, WI 53202
Phone: (414) 271-7590
Fax: (414) 271-5770

*Attorneys for Defendant*
*Carrying Hope Surrogacy, LLC*